188070. May I please the court, James Auslander for Appellant API. For 30 years, honors regulations adhere to the penalty hierarchy that Congress established in the Federal Oil and Gas Royalty Management Act, or FAGRMA, but no longer. Honors 2016 rule obliterates Congress's hierarchy, and instead seizes the very discretion that Congress denied to the agency back in 1982. Specifically, the rule allows honor to invoke FAGRMA's most severe penalty tier when a lessee fails to timely correct unintentional reporting errors. The rule does this by casting aside 30 U.S.C. section 1719A and B, which expressly require prior notice and an opportunity to correct before a penalty may ensue, and instead by shoehorning failures to correct into knowingly or willfully maintaining false information under section 1719D, which is a subsection that Congress reserved for specific criminal level violations. If these rule provisions are allowed to stand, honor with its now easier path to penalties will have no occasion to use 1719A or B and their corresponding procedural safeguards prior to assessing a penalty. Instead, a lessee that receives just a phone call or an email from honor advising of a prior inadvertent royalty reporting error, and that does not promptly correct that error, can incur the statute's most severe penalty. Now, honor's own words can be... Counsel, can I get you to address the standing issue before you launch into your argument? Yes, Your Honor. Yes, Your Honor. Our position is that API has standing as well as ripeness in this case. The district court found likewise for a few reasons. First, this case is never going to get any riper as the district court held. The question is whether honor's rule complies or does not comply with the Federal Oil and Gas Royalty Management Act. Our position is that it does not. Secondly, there is current injury to API's members that operate thousands of leases across the country, are now exposed to greater penalties after the passage of this rule that they weren't exposed to before, and also need to conform their behavior to the guidelines from the agency that the agency itself says are not appealable. Let me ask you this. Can you point to me where in your complaint you have alleged that your members intend to knowingly and willfully violate the rule as adopted? I'm sorry. Could you, Honor, repeat the question? Yeah. Where have you alleged that your members intend to willingly and knowingly violate the rule that you're challenging? Your Honor, our members, of course, don't intend to knowingly or don't intend to violate any rule. The issue, Your Honor, is that Isn't that required to show standing here? No, Your Honor. For the reasons that the district court held, and I just want to point out one practical consequence of dismissing this case on jurisdiction on the government's renewed argument is that there is at least one invalid provision that nobody can test as invalid that the district court invalidated and the government waived its cross-appeal. So the consequence of dismissing this case on jurisdictional grounds would be to reinstitute that Well, either we have the power to hear it or we don't. And, you know, so you've got to meet standing and you've got to meet injury in fact. And we don't really look to see would it be a good idea for us to exercise jurisdiction if we don't have it? Sure, Your Honor. Well, on injury in fact, and again, this is one place where the district court did get it right, the rule facially changes the standards for knowing or willful penalties. So prior to this case, any lessee that would, and again, just to take a step back, lessees submit reports on a monthly basis, thousands of lines of data, hundreds of thousands of lines of data collectively to the Office of Natural Resources Revenue. And mistakes happen in that course. They just do. But an inadvertent violation wouldn't violate the new rule, would it? It has to be knowing or willfully. But Your Honor, the issue with the rule is that it has changed the standard for knowing or willful into basically what Section A and B used to cover. So now it has collapsed the hierarchy and found that if you ‑‑ Reckless. I'm sorry? It would be reckless. No, Your Honor. The burden of proof on the government in the way that it's written this rule is minimal. All that, and I can point to, you know, just I think one example is in the proposed rule that the agency issued, and this is at 79 Fed Reg 28864. And this is the government's position in its rule. It says, for example, assume that you unknowingly provide reports of sales and royalty remittance for Honor 2014 to Honor with an incorrect product code. An incorrect product code is if you process gas versus unprocessed gas. It's an innocent mistake and it happens. For the years 2008 through 2009 for gas produced from leases located in State X. Further, assume that Honor informs you in January 2010 of the incorrect product code and you fail to correct the information on the forms you provided to Honor for those years and in that state. In that case, we would consider you to have knowingly or willfully maintained false, inaccurate or misleading information on the forms you provided to Honor 2008 and 2009 for that gas in State X. You therefore would be subject to an immediate liability civil penalty. And then later in the proposed rule, and this is maintained through the final, Honor says if you receive a communication, and by communication it means an email, preliminary determination letter, order, notice of noncompliance, immediate liability civil penalty or any other written communication identifying violation. And Honor says if you receive such a communication and do not correct the errors, we may consider this to be knowing or willful maintenance of false, inaccurate or misleading reports or data in our system. So, Your Honor, yes, in a way that Congress wrote the statute knowingly or willfully under Section 1719D is limited to very narrow criminal type conduct, physically stealing oil and gas or the paper theft, deliberately falsifying reports to Honor. Maintaining two different sets of books to minimize intentionally your burden for the royalty. Instead, what the rule does is put it all together. Well, again, you're jumping to the merits and I'm trying to focus on injury in fact for purposes of standing. So you've now focused on the failure to maintain accurate records. And so for my understanding of standing, can you point me to anywhere in the complaint where you've alleged that your members intend to decline to correct erroneous information provided to SONRA if, even if they are informed that it is incorrect and given an opportunity to do so? Your Honor, I believe the question assumes a couple of things. I mean, first, I believe that the hypothetical assumes that lessees are going to get that opportunity to correct errors in the future. And the point is that now these types of penalties that are accessible without notice or opportunity to correct are what Honor can immediately jump to without prior notice or opportunity to correct. So I think that's an assumption. Well, your hypo included notice. I'm sorry, Your Honor? The hypothetical that you just read, the fact, the reporter was given notice that information was incorrect. Would you agree with that? Yes, Your Honor. But the whole penalty hierarchy, there's one common feature for the entire penalty hierarchy and that's knowledge. So every lessee who receives an A, B, C or D penalty, why? Because they either receive a formal notice of noncompliance or they know from the time that they commit the error that it's incorrect. It's one or the other. So it's not a demarcation between them that there's knowing or willful. And the other point I'd make, Your Honor, is I think it's an unfair test to state that a lessee would have to state that it's going to knowingly or willfully basically commit a crime and allege that in court in order to be able to challenge a rule that basically rewrites the conglomerate. Isn't that what the test is? Don't you have to say, and I guess you're pushing back on this, but don't you have to make an allegation that your members will or there's a likelihood or some proximity to violating this new regulation? And I guess the answer is no? You don't believe you have to make that allegation? Your Honor, the allegation is that we produce, and by we I mean the oil and gas industry, it's thousands of lines of data. And the example that's in the proposed rule as a product code mistake, this happens. The mistakes happen. On honors and as we allege, and again it's violations that occur. And they happen. Errors happen. And the question in this case is not whether lessees have to comply with their lease obligations. The question in this case is not whether lessees can commit violations with impunity without being penalized. The question is the consequence of an unknown violation. Maybe you can get back to what do you have to allege to satisfy standing requirements in this case? I mean, just tell me what you think the standard is in terms of what you have to allege. Well, Your Honor, the government's made, argued one aspect of constitutional standing, which is injury in fact, and that also doubles for constitutional ripeness. Our position is that the government has waived prudential ripeness, but even so prudential ripeness is found because we argue purely legal issues that are completely right today. On standing, the injury is that the oil and gas, and again API represents the vast majority of producers nationwide that are producing and reporting every single month without fail. Errors happen, and as a result of the errors, when they previously would receive notice and an opportunity to correct, unless it was a crime or a criminal level activity, today those errors are now punishable by a 1719D knowing or willful penalty, and it's that penalty exposure, the greater penalty exposure, as well as the obligation to avoid that penalty risk. Now you have to comply with even e-mails or phone calls that are not formal orders that you can appeal, because if you don't, Honor will take the position as indicated in its proposed rule that you knew, you didn't do what we told you to do, and now you're going to be liable for a 1719D penalty. So can I just stop you there? I guess your answer to my question is that it's sufficient to allege standing that your members are currently engaging in activity that would violate the regulation. I believe your Honor has nicely collapsed it, and again, it's not to require that our members allege that they are going to commit crimes in order to challenge this rule would render this rule untouchable. It would basically insulate it from judicial review, because who would ever allege that? People allege, I mean, that's typically what's required to challenge, to have standing to challenge, is that it is my intent, but for this law, to violate it and therefore have standing to challenge it. I mean, isn't that what the law is on standing? I disagree, Your Honor, because the injury, and again, I would refer to the briefing and the case as cited, is that not that industry would allege that they are going to knowingly or will, that they are going to commit a D penalty. What we're alleging is that we produce on a widespread basis, we are going to commit errors because they happen, and now those errors are punishable in a way that they weren't before. That's the whole point of the rule. And so there is no other entity that would have standing to challenge this rule if that were the rationale for rejecting jurisdiction here, with all due respect, Your Honor. One point that I wanted to, and I want to reserve a minute. And I'm going to give you an extra minute and a half to address, for rebuttal to address the merits. Thank you, Your Honor. Assuming you don't take it right now. Yes, okay. Well, Your Honor, then I will, I'll respectfully reserve that time. Yes, thank you, Your Honor. Okay. So we'll add a minute and a half. Yeah. Good morning, Your Honors. May it please the Court. My name is Varu Cholakamari for the Department of Justice. And I am here to present the ruling that Mr. Gould has just signed. The first thing he says is that if the rule were as Your Honors have put it, then nobody would have standing to challenge this. It's simply not the case. The Statoil case that's percolating now and is pending before the Fifth Circuit is a prime example of where a company was issued a penalty for knowingly or willfully maintaining false information in a database, and they raised an as-applied challenge. They went through the administrative process, and they argued that the definition of maintain, which, by the way, Honor had even before this 2016 rule, but that definition of maintain is invalid. In fact, we have same coal counsel on that case as well, and they're able to make those arguments. So that's how one would make that argument. How do you deal with then Judge Ginsburg's opinion of National Coal Association versus Lujan? So that's the one case that they cite. I don't think that that opinion, I think it might assume standing, but that opinion actually does not address the question of when pre-enforcement review is available. Well, let me probe that a little bit. My understanding is that Judge Ginsburg was saying that a regulation or statute that is designed to compel a change in corporate behavior is enough to trigger Judge Ginsburg's opinion. ONRR on 50314 specifically justifies these civil penalties as a foundation in which to encourage compliance with correct reporting. It seems to me that what ONRR specifically said to defend its regime of civil penalties is exactly what Judge Ginsburg was talking about in Lujan. So a couple of responses. I think in that D.C. Circuit case that you're referring to, the Court did not address this question of under the Susan B. Anthony test, when you have to show that you're going to engage in conduct in order to challenge it from a pre-enforcement standpoint. The case simply addressed who would suffer the injury, whether it was the individual or the corporate, but assuming that your reading is correct. Well, even your reading. I mean, if the corporation would suffer an injury. So you're saying that Judge Ginsburg said that the corporation would have standing to challenge, right? I think that's a – that case just doesn't address this question. Well, she did address – did she not address standing for somebody? No, they didn't. She did address standing, but the issue of what you have to do to have an injury, in fact, just didn't come up. But I think, to take Your Honor's example, there – I would distinguish it another way. And here, the agency is not imposing new substantive requirements on the companies, because under preexisting regulations – and I would point you to 30 CFR 1230.10, which the agency cites, too, in its rule – that regulation required companies to go back and correct mistakes if they discover later that they submitted false information. Sure. They didn't have any new reporting requirements. No, new substantive obligations. New substantive reporting requirements. But what they did have is precisely what Judge Ginsburg was talking about, a new regime in which they would be subject to enhanced penalties in which to influence their future behavior, which, maybe wrongly, I thought Judge Ginsburg specifically said was enough to trigger standing. I think, you know, that case just didn't analyze – the Susan B. Anthony test came later. And all I can say is I think under the Supreme Court's more recent precedent in the Susan B. Anthony case, that court said that that was a criminal case. If you want to challenge a statute before it's imposed against you, you have to at least put forward some evidence – declaration, which we have nothing here – some evidence saying, I would like to, I intend to do what would trigger those penalties. So here, what you're saying is, in order to – if it's facially invalid, it's facially invalid. Nobody can ever challenge it because someone would have to come forward and say, I intend to steal from the government. And so because I intend to steal from the government, I'm going to be subject to more enhanced, more serious penalties than I should have to face. Is that really the test that the Supreme Court has elucidated for standing when you're talking about a challenge to enhanced penalties? I think that that – the Susan B. Anthony test does say that. And if you want to look at another case, the Lujan v. National Wildlife Federation case, which we cite, too, says actually that usually under an APA challenge, which is what they are invoking here, you challenge a rule on its face, unless that rule is actually changing your substantive obligations. That is what the Court said in the National Wildlife Federation. And so that's what I would point you to. I would also point you to the Sixth Circuit case, the Crawford case that we cite, too, in our brief, because I think that is actually very similar to what we have here. In the Crawford case, you had a penalty rule that related to people who had foreign bank accounts, and they had reporting requirements. And in that case, people who actually had foreign bank accounts and were subject to reporting requirements, they tried to – like here, they tried to challenge that rule and challenge the penalty provision. And the Sixth Circuit said, following the Susan B. Anthony test, you have to show not just that you're a member of the regulated community, but that you are going to be engaging in conduct that would trigger the penalties that you're now trying to challenge. Otherwise, it's not right for – you don't have standing, and it's not right for a facial challenge. Now, again, that does not mean that nobody can challenge this. And here we have a – we're in a great position where I can point you to a company that is challenging it right now, not only in the Statoil case, but other corporations have challenged the other elements. For example, in the Cabot oil case that we cite, too, in our briefs, and then in 1999, the Meridian company, they both challenged the agency's longstanding interpretation of knowing or willfully, which is the same interpretation that's codified now. So those are three examples of companies that have been able to challenge the definitions that the agency has put forward. And so we don't think that API has shown standing here. Not only do they not meet the requirements, but they didn't even put forward the evidence that you would need to on the merits – at the merits stage. I'd like to use – unless there's any more questions on jurisdiction, I'd like to use the rest of my time to respond to a few of the points. The first point, again, that this was a longstanding 30-year interpretation that the government has changed. There's simply no evidence for that. As I mentioned in the Statoil, the Cabot oil, the Meridian cases, the agency has consistently interpreted the words knowingly or willfully and the phrase maintain the same way that it has in its rule. In addition, they argue that the agency has increased the burden. And they point to the regulation 1241.60, which provides pieces of evidence that the agency could use to establish that there is a knowing or willful violation. But that regulation doesn't change the burden of proof. And it also doesn't say what kind of evidence would be a per se indication of knowing or willfully. It simply says what is always true, that the government in an enforcement case or in a criminal case, it could use information as proof. But that doesn't mean that a judge or an ALJ would have to take that proof as a – that was a per se indication of knowledge. It doesn't mean that a company couldn't rebut that evidence. If the agency sends the company an e-mail saying there's some discrepancies here, we'd like you to clarify it, that doesn't mean that all of a sudden the company is liable. The company – that would probably start a conversation with the enforcement folks at the agency. And at the very least, the company will have an opportunity through the administrative law judge process and through the courts to rebut that evidence. What he's saying, and again, I think in connection with standing, is that never before – you're arguing in part that, well, there's no new reporting obligations. And I think that's true as far as it goes. But part of his argument is that now, as soon as you get a phone call from ONRR, you better comply, even if you think the phone call's instruction is incorrect, because now that could – under 1719D, you know, could result in criminal prosecution. Whereas under the pre-1719D regime, you would be able to go through an administrative appeal. There was no necessity of complying with a phone call or an e-mail. It had to be a final agency action. So the response to that is that even under the new rule, you are not – the company is not going to be charged with violating an e-mail. The company would be charged with violating 1719D. So that's the standard. They would have – the agency has the burden of proof to show that the company knowingly or willfully maintained the false information. The e-mail – you're not violating the e-mail. The e-mail might say to alert the company that there's a mistake. The company, though, could have a good-faith belief that maybe its data is correct. In that case, there would have to be a dialogue. But the company, if it had a good-faith belief that the information that it's given to the agency is actually correct, then the agency's not going to be able to show that they knowingly or willfully maintained the documents. And the company, even under a 1719D violation, under the higher penalty tier, the company still goes through – still has the opportunity to get an administrative appeal. They don't have to pay the penalty until that appeal is final. And so there's no – They can't administratively appeal the phone call or e-mail. No one is – if the phone call or e-mail – the phone call or e-mail isn't a violation. It's not an indication of a violation. It's simply communication with the agency. They'd have to say, I don't think what the ONRR is telling me in a phone call or an e-mail is right. I'm going to disobey this. And then ONRR will be able to say, you knowingly or willfully disobeyed our instructions to you, and therefore you face these enhanced civil penalties under 1719D. And under 1720, you could face criminal prosecution because you disobeyed our phone call. No. So the disobeying the phone call or the e-mail – so let me step back. 1719D does not make it a violation to ignore a phone call or an e-mail. The only thing that you get a penalty for under 1719D is to knowingly or willfully maintain false information. So the agency would have to show that the company submitted false information, knew then later that the information was false, and then just sat on the information for more than 30 days, didn't correct it. That would be the violation. The e-mail or the phone call may simply be evidence that the Thank you. And I would also like to note that one of the arguments that the Housing Council made is that agency's interpretation of 1719D is now sort of collapsing this hierarchy and that 1719A and B, those lesser penalty tiers, are no longer sort of being used. And that's simply not the case. A and B cover a much broader set of conduct. And Congress specifically used 1719D for more serious culpable conduct. And I think an example might just illustrate this point. If a company simply fails to submit the royalty report for the month of October, that would be a violation that would be penalized under 1719A. The company, by just not submitting the report at all or being very late in submitting the report, it's not maintaining false information anywhere. It's just not doing something else that it's required to do. So that would be penalized under the lesser tiers. That's a clear example of why you don't have a collapsing of these two, of these separate penalty tiers. Unless this Court has any further questions. Thank you very much. Will, can I ask you a question on the merits? With regard to the willfulness, does that issue essentially boil down to whether we give precedence to the role of lenity or Chevron? I don't think so, Your Honor. I think that the way that we've argued this and the way that the district court considered the knowing or willful phrase, they, the court found that under the Safeco case and the way that the Supreme Court has read the term willful in the civil penalty context, that it typically means reckless disregard. And so I think under a Chevron step one analysis, which is what the district court did, you could find that willful in this context, the plain language covers reckless disregard. If it's ambiguous, do we just have to decide which one takes precedence? Which one? The rule of lenity or Chevron? If it's ambiguous, and we talk about this in our brief, we don't think it is, but if it is ambiguous, the rule of lenity wouldn't apply. And the Supreme Court in the Abbott v. Sweet Home case, we cite that in our brief, the court said there that the rule of lenity does not apply on facial challenges. And the reason why is because the rule of lenity is basically a rule of fair notice. So when you're in a facial challenge, you don't have a problem of somebody not having fair notice of what the interpretation is. There's no specific company or criminal defendant that it's being applied to. And so when you have an agency that has interpreted the term willful here in a public rule, there's no question of fair notice. The rule of lenity really doesn't come into play. It wouldn't come into play anyway until you've gone through all of the normal tools of statutory construction. And what the Abbott case says is that you would also apply reasonable deference before you even get to the rule of lenity in an as-applied challenge. Thank you, Your Honor. We would ask that you dismiss the case for lack of jurisdiction and in the alternative, affirm on the merits. Thank you. I believe Opposing Counsel just confirmed there's no difference between a 1719A and B penalty and a 1719D penalty. The same conduct tributes both in the way that the agency has rewritten the statute. And the simple fact is that Congress did not intend to throw royalty revenue accountants into jail for delayed correction of royalty reports. On standing, again, as the district court found, there is a threat and injury of severe penalties without a prior notice of noncompliance is sufficiently imminent to establish standing for API's members. We commented in detail on this rule. Our members increased penalty risk and believe that standing is shown here. On the appeal, again, some of these informal notices are just not appealable. It's too late to get to the penalty phase. The rule says that if you don't appeal the underlying violation, you just appeal at the penalty phase. That's not going to be enough. And the assurances that we've heard are also not enough. The rule says what it says. The evidentiary provision, if you look at the version in the proposed rule, the final very, if you do receive one of these informal communications and you don't fix it, that's going to be enough for knowing or willful penalties. I would be remiss to say there is one other provision in the, that we challenge, which basically forces honor to close its eyes in all circumstances to the royalty consequences of the penalty. And sure, honor can evaluate on the first instance whether royalty is going to be, should increase or decrease amount, but the point is that it categorically will not consider this and only this factor. You admit in your brief, I believe, that there might be an instance where it is appropriate not to consider the impact on the royalty. Yes, Your Honor. Sure. Doesn't that defeat a facial challenge? If there's any possible way the provision can be upheld, then you lose on a facial challenge, don't you? Well, I would submit, respectfully submit, Your Honor, that this self-constraint is, it's not that the agency hasn't considered a penalty in a given case. It's a categorically blinding of refusing to consider it in any case. And really that's a per se arbitrary provision, period. Again, for the reasons that we explained. So, again, like the one that was struck down below, I believe that this provision is facially invalid. If I just, one more second, Your Honor, on the Statoil case, that case was brought, it was the first time that the agency ever had announced this interpretation back in 2012. It cited the Statoil case as the, to bootstrap it as the justification for its rule. And that case is just completely in a posit to what this case is. This case is the rule that was issued while that case was ongoing. Now it's a broadly applicable and the first time to challenge it was in 2016. So the existence of the prior Statoil challenge doesn't defeat this one. That's my point, Your Honor. Thank you. Thank you. Thank you. This matter will be submitted. Both sides did an excellent job in your advocacy and writing and in your argument today. And we appreciate your hard work for both sides. Court will be in recess until 9 o'clock tomorrow morning.